Troy MONTGOMERY, Robert Crossk, William Smith, Bernadette Costa, John Aguilera, Lance Ryskamp, Larry Blanchard, Frances Dupey, Rudolph Clay, Gerald Scheub, and Lake County, a political subdivision of the State of Indiana, individually and on behalf of all other property owning taxpayers within the jurisdictional limits of Lake County, Indiana,[1] Petitioners,

v.

STATE BOARD OF TAX COMMISSIONERS, Indiana Family & Social Services Administration, Morris Wooden, Auditor, State of Indiana, Joyce Brinkman, Treasurer, State of Indiana, and State of Indiana, Respondents.

No. 45T10–9807–TA–00084.

Tax Court of Indiana.

April 14, 1999.

1. The caption has been changed to reflect the Court's dismissal of certain parties from this case.

Peter L. Benjamin, Gerald M. Bishop, Greco Pera & Bishop, Merrillville, Indiana, Attorneys for Petitioners.

Jeffrey A. Modisett, Attorney General of Indiana, Angela L. Mansfield, Deputy Attorney General, Beth H. Henkel, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Respondents.

## ORDER ON MOTION TO RECONSIDER

### FISHER, J.

On July 20, 1998, the Lake County Council, Lake County, and the Lake County Board of Commissioners, as well as various members of the Lake County Council and the Lake County Board of Commissioners, filed an original tax appeal challenging the constitutionality of Indiana's Health Care for the Indigent (HCI) property tax levy. On October 9, 1998, the respondents filed a motion to dismiss. In that motion, the respondents contended that the Court lacked subject matter jurisdiction over this case and also that the governmental petitioners in this case lacked standing to challenge the constitutionality of the HCI property tax levy. On January 19, 1999, the Court ruled on the respondents' motion in a published order. See Lake County Council v. State Bd. of Tax Comm'rs, 706 N.E.2d 270 (Ind. Tax Ct.1999). In the order, the Court concluded that it had subject matter jurisdiction over this case and therefore denied the respondents' motion to dismiss. However, the Court granted the respondents' motion to dismiss the governmental petitioners because they had no standing to challenge the constitutionality of the HCI property tax levy.[2]

In its order, the Court relied on the Indiana Supreme Court's decision in State Board of Tax Commissioners v. Mixmill Manufacturing Co., 702 N.E.2d 701 (Ind.

1998). On February 5, 1999, the Indiana Supreme Court issued an unpublished order modifying its opinion in Mixmill. On February 10, 1999, the respondents filed a motion asking the Court to reconsider its order in this case in light of the Indiana Supreme Court's modified opinion in Mixmill. The Court agreed to reconsider its order and, accordingly, stayed all proceedings in this case pending the Court's reconsideration of its order. On March 18, 1999, the Court heard argument on the respondents' motion.

The respondents raise two issues in their motion. First, the respondents contend that the modifications to the Mixmill case compel the conclusion that the Court is without subject matter jurisdiction to hear this case. Second, the respondents contend that the Court prematurely evaluated the merits of the case when determining whether the administrative remedies available to the petitioners were inadequate.

The Court will first deal with the respondents' contention that the Court prematurely evaluated the merits of the case. As a starting point for its analysis of this issue, the Court notes that its subject matter jurisdiction over this case is predicated upon the inadequacy of the administrative remedies available to the petitioners because the petitioners in this case did not exhaust their administrative remedies. See Lake County Council, 706 N.E.2d at 275. Exhaustion of administrative remedies is generally required before a court may exercise jurisdiction over a matter conferred to an administrative agency. See Smith v. State Lottery Comm'n, 701 N.E.2d 926, 931 (Ind.Ct.App.1998). One exception to this general rule is where the available administrative remedies are inadequate. See id. As a result, the Court, in its analysis of whether it had subject matter jurisdiction, was required to examine the adequacy of the administrative remedies in this case and determine the legal issues raised by this examination. To the extent that these legal issues involved the law gov-

---

2. The Court also concluded that although Lake County did not have standing to challenge the constitutionality of the HCI property tax levy, it did have a legally cognizable interest in the outcome of this case, namely, the interest in protect-
ing the Lake County General Fund from being overwhelmed by refund claims. See Lake County Council, 706 N.E.2d at 281. Accordingly, the Court gave Lake County leave to amend its complaint.

erning the HCI property tax levy, a complaint that the Court was determining the merits of the case cannot succeed. *See Perry v. Stitzer Buick GMC, Inc.,* 637 N.E.2d 1282, 1286–87 (Ind.1994); *cf. Coopers & Lybrand v. Livesay,* 437 U.S. 463, 469, 98 S.Ct. 2454, 2458, 57 L.Ed.2d 351 (1978) (When court examines whether class action should be certified that determination may involve considerations that are "enmeshed in the factual and legal issues comprising the plaintiff's cause of action.") (quoting *Mercantile Nat'l Bank v. Langdeau,* 371 U.S. 555, 558, 83 S.Ct. 520, 522, 9 L.Ed.2d 523 (1963)); *Retired Chicago Police Ass'n v. City of Chicago,* 7 F.3d 584, 598–99 (7th Cir.1993) (line separating class determination and merits is not easily discernable).

Accordingly, the respondents' complaint that the Court should not have examined whether the HCI property tax was a state tax in its evaluation of the adequacy of the administrative remedies available to the petitioners misses the point. That the conclusion that the HCI property tax is a state tax, *see Lake County Council,* 706 N.E.2d at 277, can be read as being "on the merits" because a legal issue has been resolved or as having some bearing on the merits of this case [3] because the fact that the HCI property tax is a state tax may have something to do with the constitutionality of that tax (i.e., the merits of this case) has nothing to do with whether the Court was required to deal with this issue in order to make the threshold determination of whether it had subject matter jurisdiction.[4] *Cf. Barnes v. American Tobacco Co.,* 161 F.3d 127, 140 (3d Cir.1998) (where court evaluates whether class action should be certified, court must not consider who will ultimately prevail, but still may have to go behind pleadings in making that evaluation), *petition for cert. filed,* 67 U.S.L.W. 1307 (U.S. Mar. 16, 1999) (No. 98–1489). Courts must often come to factual and legal conclu-

sions regarding their jurisdiction over a case. *See Perry,* 637 N.E.2d at 1286–87. This case is no different. In order to determine whether the Court had subject matter jurisdiction, one of the legal issues the Court was called upon to resolve was whether the HCI property tax levy was a state tax or a local tax. The Court did so, and it cannot be erroneous to do what the law requires.

■ The respondents also contend that in its analysis of the available administrative remedies, the Court did not take into consideration the possibility that the State could indemnify the Lake County General Fund for any refunds of HCI property tax illegally collected. Therefore, according to the respondents, the Court erred in its determination that the administrative remedies available to the petitioners were inadequate. The respondents would be correct if the State were required to indemnify the Lake County General Fund for HCI property tax refunds. This indemnification would obviate the Court's conclusion that the Legislature did not intend to make refunds of state taxes payable from county general funds, *see Lake County Council,* 706 N.E.2d at 278, and would remove all doubts about the adequacy of the administrative remedies in this case because the petitioners, if ultimately successful, could receive refunds pursuant to chapter 6–1.1–26 of the Indiana Code. However, the Court's research has disclosed absolutely no authority for any indemnification by the State of county general funds for refunds of HCI property taxes. Therefore, the possibility of the indemnification envisioned by the respondents is, at best, speculative.

Consequently, the respondents' contention that the failure of the Court to evaluate the possibility of indemnification of county general funds by the State led the Court to erroneously conclude that the administrative

---

3. The Court, of course, expresses no view as to whether the conclusion that the HCI property tax is a state tax has any bearing on whether the HCI property tax levy is unconstitutional or whether the petitioners' claim has any merit.

4. The respondents do not identify how the Court was supposed to make the threshold determination of its jurisdiction over this case (putting aside the issue of the lack of a State Board final

determination) without evaluating this issue. Apparently, the respondents have the view that a court may not resolve a legal issue pertinent to this threshold determination where the resolution of that legal issue can be read to have some bearing on the merits of the case. If there is any authority for this view, it has not been presented to the Court.

remedies available to the petitioners were inadequate is without merit. There is no authority for the proposition that a court evaluating the adequacy of an administrative remedy must speculate about what the future may bring. That is precisely what the respondents ask the Court to do. The Court must decline the invitation.

■ The Court now turns to an analysis of whether the Indiana Supreme Court's modification of *Mixmill* changes the Court's conclusion that it has subject matter jurisdiction over this case. As the Court noted in the order, after it has been determined that the administrative remedies are inadequate, the question is not *whether* immediate judicial review is proper, but *where* that judicial review may be had. *See Lake County Council,* 706 N.E.2d at 278–79. In its order, the Court determined that the proper place for judicial review was in the Tax Court. Despite the Indiana Supreme Court's modification of *Mixmill,* the Court's view has not changed.

It is axiomatic that "[t]he tax court is a court of limited jurisdiction." IND.CODE § 33-3-5-2(a) (1998). The Tax Court's jurisdiction is restricted to cases that "arise under the tax laws of this state and that [are] initial appeals of final determination[s] made by" either the Department of State Revenue or the State Board. *Id.* The Legislature has also provided that where "a taxpayer fails to comply with any statutory requirement for the initiation of an original tax appeal, the tax court does not have jurisdiction to hear the appeal." *Id.* § 33-3-5-11(a); *see also Mixmill Mfg. Co.,* 702 N.E.2d at 704 ("In view of the explicit language of these provisions, we can only conclude that the legislature intended to require the taxpayer to follow all statutory procedures for review before going to the Tax Court.").

In this case, the first statutory jurisdictional prerequisite is met. This case arises under the tax laws of Indiana. *See Lake County Council,* 706 N.E.2d at 274. However, the second statutory prerequisite is not met: there is no State Board final determination. *See id.* at 275. The respondents contend that this precludes the Court from exercising jurisdiction in this case whether the adminis-

trative remedies available to the petitioners are adequate or not. In evaluating the respondents' contention, the Court must apply the statutory provisions governing the Tax Court's jurisdiction to the facts of this case.

■ The cardinal rule of statutory interpretation is to ascertain and give effect to the intent of the legislature, and all other rules of statutory interpretation are subservient to that cardinal rule. *See Chavis v. Patton,* 683 N.E.2d 253, 259 (Ind.Ct.App.1997); *see also Collier v. Collier,* 702 N.E.2d 351, 354 (Ind. 1998) (goal of court is to implement intent of Legislature). In general, the best evidence of this intent is found in the language chosen by the Legislature. *See Wilson v. Pleasant,* 660 N.E.2d 327, 337 (Ind.1995); *Associated Insurance Cos. v. Department of State Revenue,* 655 N.E.2d 1271, 1273 (Ind. Tax Ct.1995), *review denied; see also Hyatt Corp. v. Department of State Revenue,* 695 N.E.2d 1051, 1053 (Ind. Tax Ct.1998) (Legislature presumed to mean what it says), *review denied; Chisom v. Roemer,* 501 U.S. 380, 417, 111 S.Ct. 2354, 2376, 115 L.Ed.2d 348 (1991) (Scalia, J., dissenting) (following plain language of statute gives Legislature assurance that statutes will be given a predictable meaning thus giving Legislature "a sure means by which it may work the people's will"). However, statutory provisions must be read as a whole to ascertain legislative intent. *See State Natural Resources Comm'n v. AMAX Coal Co.,* 638 N.E.2d 418, 429 (Ind.1994). In addition, where the Indiana Supreme Court has determined the Legislature's intent in enacting a statutory provision, that determination is binding upon lower courts. *See Mechanics Laundry & Supply, Inc. v. Department of State Revenue,* 650 N.E.2d 1223, 1228 (Ind. Tax Ct.1995).

The Indiana Supreme Court has spoken about the Legislature's intent in creating the Tax Court. In the words of the Indiana Supreme Court, "the policy underlying the creation of the Tax Court was to consolidate tax-related litigation in one court of expertise." *State v. Sproles,* 672 N.E.2d 1353, 1357 (Ind.1996). Pursuant to this policy, "[t]he Legislature transferred jurisdiction over tax cases from the circuit courts to the Tax Court...." *Id.* at 1358. In light of this

legislative policy, the Indiana Supreme Court concluded that "the Legislature intended that *all* challenges to the tax laws ... be tried in the Tax Court." *Id.* at 1357 (emphasis added). As the Indiana Supreme Court noted, this policy choice makes a great deal of sense:

> If circuit courts could invalidate listed taxes,[5] a patchwork of conflicting rulings on a tax's legality could significantly affect the revenue-collection process and the budgeting that depends on those revenues. The Legislature understandably wanted to avoid this result when it created a specialized judicial tribunal for tax disputes.[6]

*Id.* at 1362.

In light of these strong statements by the Indiana Supreme Court concerning the Legislature's intent and policy in creating the Tax Court, it would seem that the Court may simply declare that the Legislature intended that this tax case be tried in the Tax Court and that, therefore, the Court has subject matter jurisdiction. *See Sullivan v. Day,* 681 N.E.2d 713, 717 (Ind.1997) (court must "determine, give effect to, and implement" intent of Legislature). However, there is one problem that must be resolved, namely, the statutory requirement of a State Board final determination. There is none in this case.[7] The Court must therefore determine what effect the lack of a State Board final determination has on this case.

The first possibility is that the requirement of a final determination in subsection 33–3–5–2(a) means that a taxpayer must proceed through the administrative process before resorting to the Tax Court in all cases, whether the administrative remedy is adequate- or not. This would spell doom for the petitioners' appeal in this Court and would also foreclose immediate judicial review in a court of general jurisdiction. *See Sproles,* 672 N.E.2d at 1358 ("[O]nce taxpayers are forced into the administrative paths, the only court for review ... is the Tax Court."). However, the Court cannot read subsection 33–3–5–2(a) in such a manner. In *Sproles,* the Indiana Supreme Court predicated the Legislature's ability to "channel tax appeals to the administrative process" on the condition that the administrative remedies are in fact adequate. *Id.* at 1361. In this case, as the Court has found, the administrative remedies are inadequate.[8] Therefore, the petitioners cannot be forced into the administrative process before they seek judicial review.[9]

---

**5.** The HCI property tax is not a listed tax. *See* IND.CODE § 6–8.1–1–1 (1998). However, the Indiana Supreme Court's observation has the same force in the property tax arena.

**6.** The Court notes that challenges to the HCI property tax levy could be brought in any one of Indiana's ninety-two counties. This could create havoc with the administration of Indiana's HCI program. It is unlikely that the Legislature would have intended such a result.

**7.** As the Court noted in its order, the letter from Mr. Sabatine explaining the State Board's position on the HCI property tax levy did not constitute a State Board final determination, *see Lake County Council,* 706 N.E.2d at 275, nor, for that matter, did the State Board's certification of the HCI property tax levy rate pursuant to IND.CODE § 12–16–14–4 (1998), because the State Board was not operating in an adjudicatory manner when it certified the Lake County HCI property tax levy rate. *See Board of Sch. Comm'rs v. Eakin,* 444 N.E.2d 1197, 1202 (Ind.1983).

**8.** If the administrative remedies were adequate in this case, the lack of a State Board final determination would be fatal to the petitioners' appeal.

**9.** However, the fact that the lack of an adequate remedy allows for immediate judicial review does not necessarily mean that the State Board is categorically prohibited from reviewing the petitioners' claims. It seems likely that the Court could retain jurisdiction, but refer some or all of the issues presented in this case to the State Board so that it may bring its expertise to bear on this case. *Cf. Austin Lakes Joint Venture v. Avon Utils., Inc.,* 648 N.E.2d 641, 647 (Ind.1995) (court exercising primary jurisdiction must refer issues to agency, where issues are to be determined by agency). Although the State Board has no authority to declare the HCI property tax levy unconstitutional, *see Sproles,* 672 N.E.2d at 1360 (citing IND. CONST. art. III, § 1), and there is no requirement that the Court refer any issues presented in this case to the State Board, there is likely something to be gained by having the State Board pass on some or all of the issues presented in this case. *See id.; Lake County Council,* 706 N.E.2d at 276 n. 10. Accordingly, if there is a request by one of the parties that the Court refer some of the issues presented in this case to the State Board, the Court must consider that request.

The second possibility is that where there is no adequate administrative remedy available to a petitioner in a tax case, only "courts of general jurisdiction may adjudicate the [petitioner's] claim." *Sproles,* 672 N.E.2d at 1361 n. 19; *see also State v. Hoovler,* 668 N.E.2d 1229 (Ind.1996) (listed tax declared unconstitutional in circuit court). This possibility, however, creates some interesting results. In *Sproles,* the Indiana Supreme Court held the statutory scheme did not allow a taxpayer to avoid the Tax Court by bypassing the administrative process and filing suit in a court of general jurisdiction. It would therefore seem odd to find that the Legislature intended to *require* taxpayers to file suit in a court of general jurisdiction where the available administrative remedies are inadequate. *See Sproles,* 672 N.E.2d at 1358 (noting that Legislature "transferred" jurisdiction over tax cases from circuit courts to Tax Court).

The third possibility is that the Legislature enacted subsection 33–3–5–2(a) with its final determination requirement in order to codify the exhaustion rule applicable to tax cases [10] prior to the creation of the Tax Court. This would make the failure to exhaust administrative remedies a jurisdictional defect where exhaustion of administrative remedies was required, but would not make the failure to exhaust administrative remedies a jurisdictional defect where exhaustion of administrative remedies was not required.[11] In that way, all tax cases, even those where the administrative remedies could be bypassed (i.e., the rare circumstance where administrative remedies are inadequate in tax cases), would come to the Tax Court, thus giving effect to the Legislature's intent to "consolidate tax-related litigation in *one* court of expertise." *Sproles,* 672 N.E.2d at 1357 (emphasis added). In addition, this reading of subsection 33–3–5–2(a) gives the broadest possible effect to the exclusivity provision of

subsection 33–3–5–2(b). Once again, this would be entirely consistent with the Legislature's intent as determined in *Sproles. See Associated Insurance Cos.,* 655 N.E.2d at 1274 (construing statutory language broadly in order to effect legislative intent); *see also Stanek v. State,* 603 N.E.2d 152, 153–54 (Ind. 1992) (construing statutory provision in light of legislative intent rather than explicit language); *Department of State Revenue v. Estate of Hardy,* 703 N.E.2d 705, 710 (Ind. Tax Ct.1998) (eschewing strict literal meaning of statutory language where literal meaning of the language was at odds with legislative intent).

The third possibility seems the most likely. It (unlike the first two possibilities) harmonizes the legislative intent and purpose in enacting subsection 33–3–5–2(a) with the language the Legislature has chosen. However, before the Court may adopt that interpretation of subsection 33–3–5–2(a), the Court must deal with *Mixmill* and its impact on the Tax Court's jurisdiction. In *Mixmill,* the Indiana Supreme Court faced a situation where the failure of county officials to act on a petition for review prevented the taxpayer from obtaining further administrative review (i.e., by the State Board) and judicial review of its property tax assessment. The *Mixmill* court held that the Tax Court did not have jurisdiction because the State Board had not issued a final determination in the case. The *Mixmill* court also held that the taxpayer could file a mandamus action not in the Tax Court, but rather in a court of general jurisdiction, to force the county officials to act on the petition.[12] Central to these holdings was the fact that there was no State Board final determination from which the taxpayer could file an appeal in the Tax Court.

As the Court noted in its order, this case is different from *Mixmill.* The most obvious difference is that in *Mixmill,* the property

---

10. Tax cases seem to be treated differently from other administrative decisions. *Compare Sproles,* 672 N.E.2d at 1360–61 (exhaustion required even in constitutional cases) *with Rambo v. Cohen,* 587 N.E.2d 140, 144 (Ind.Ct.App.1992) (exhaustion not required when claim is beyond agency's competence).

11. In other words, in codifying the exhaustion rule in tax cases, the Legislature codified the exceptions to that rule.

12. The *Mixmill* court did not examine whether the inherent power of the Tax Court to ensure that it will ultimately be able to decide a case within its purview conferred jurisdiction on the Tax Court to order the county officials to act.

tax assessment at issue in that case will ultimately be eligible for review in the Tax Court, whereas this case, if this case is adjudicated in a court of general jurisdiction, will never come to the Tax Court. Second, the mandamus action that is to be brought in a court of general jurisdiction is not really a tax case. It does not involve the collection of a tax or defenses to that collection. *See Sproles*, 672 N.E.2d at 1357. Rather, it involves the determination of what is a reasonable time for county officials to act on a petition for review. This case, on the other hand, involves the constitutionality of the HCI property tax levy, a type of case specifically held to arise under the tax laws of this state. *See id.* Furthermore, *Mixmill* did not involve a situation where the available administrative remedy was found to be inadequate.

The last of these enumerated differences is the most important. Because the administrative remedy was not inadequate in *Mixmill,* there could be no "circumvent[ion] of the administrative process." *Mixmill Mfg. Co.,* 702 N.E.2d at 704. When viewed in this light, it is apparent that the *Mixmill* court was enforcing the exhaustion rule. *Id.* (taxpayer must get ruling from administrative agency before seeking judicial review in almost every case). In this case, however, the exhaustion of administrative remedies is not required because the available administrative remedies are inadequate. Therefore, it is difficult to see how the complaint that there is no final determination (i.e., no exhaustion) has any force in this case. Accordingly, the Court concludes that the *Mixmill* decision as modified does not preclude the Court from exercising jurisdiction over this case.

Another problem with adopting this interpretation of subsection 33–3–5–2(a) is that it is in conflict with a statement contained in *Sproles.* In *Sproles,* the Indiana Supreme Court stated that "[w]here remedies are found to be inadequate, courts of general jurisdiction may adjudicate the claim because the Indiana Constitution creates a right to judicial review of administrative actions." *Sproles,* 672 N.E.2d at 1361 n. 19. If this were the only guidance in *Sproles* on this issue, then the Court would have no choice but to dismiss this case. However, as outlined above, *Sproles* contains a great deal of guidance with respect to the legislature's intent with respect to the creation and jurisdiction of the Tax Court. The *Sproles* court's statement concerning cases where remedies are inadequate is difficult to reconcile with the broad language concerning the legislative intent and policy in creating the Tax Court. Because the legislature's intent is the most important factor in statutory interpretation, *see Melrose v. Capitol City Motor Lodge, Inc.,* 705 N.E.2d 985, 989 (Ind.1998), the Court will follow the *Sproles* court's guidance in this area, rather than its statement about cases where remedies are inadequate.[13]

Accordingly, the Court holds that the lack of a State Board final determination is not fatal to the Court's subject matter jurisdiction over this case. This case is a tax case, and it was properly filed in the Tax Court. Therefore, the respondents' motion to dismiss must, once again, be DENIED.

## CONCLUSION

For the aforementioned reasons, the Court DENIES the respondents' motion to dismiss. The Court's ORDER staying further proceedings in this case is hereby VACATED. Lake County is hereby given leave to amend its complaint within thirty days of this ORDER. The respondents are hereby ordered to file their answer to Lake County's amended complaint within sixty days of this ORDER.

IT IS SO ORDERED.

---

**13.** This statement also appears to be dicta. The *Sproles* court was not dealing with a situation where the available administrative remedies were inadequate. Therefore, the *Sproles* court's statement was "not necessary to the determination of the issues presented...." *Koske v. Townsend Eng'g Co.,* 551 N.E.2d 437, 443 (Ind.1990).